IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMIL BLACKMON,

        Plaintiff,

v.                                 CIVIL ACTION NO. 01-CV-6429

ALLEN IVERSON,

        Defendant.

## ORDER

AND NOW, this     day of             , 2003, upon defendant's motion to dismiss plaintiff's second amended complaint, pursuant to Rule 12(b)(6), F.R.Civ. P., plaintiff's opposition thereto and the briefs and arguments of counsel thereon, it is hereby

ORDERED that said motion is GRANTED, and plaintiff's second amended complaint in this matter, consisting of one remaining count, is dismissed in its entirety, with prejudice.

                                                      MARY A. McLAUGHLIN
                                                      United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMIL BLACKMON, | : |
|       Plaintiff, | : |
| v. | :    CIVIL ACTION NO. 01-CV-6429 |
| ALLEN IVERSON, | : |
|       Defendant. | : |

### MOTION TO DISMISS SECOND AMENDED COMPLAINT

Defendant, Allen Iverson, through his attorneys, hereby moves this Court, pursuant to Rule 12(b)(6) F.R.Civ. P., to dismiss plaintiff's second amended complaint, consisting of one restated count, in its entirety, with prejudice, on the grounds set forth in the accompanying memorandum.

WHEREFORE, defendant respectfully requests that the second amended complaint be dismissed with prejudice, for failure to state any claim upon which relief can be granted.

*Kathleen Johnson*
JOSEPH J. SERRITELLA (I.D. No. 17960)
KATHLEEN A. JOHNSON (I.D. No. 87822)
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, Pennsylvania 19103-2799
(215) 981-4000

and

                                                    THOMAS B. SHUTTLEWORTH, II  
                                                    LAWRENCE H. WOODWARD, JR.  
                                                    (Admitted *Pro Hac Vice*)  
                                                    Shuttleworth, Ruloff, Giordano &  
                                                      Swain, P.C.  
                                                    4525 South Boulevard, Suite 300  
                                                    Virginia Beach, Virginia  23452  
                                                    (757) 671-6000  

                                                  Attorneys for Defendant ALLEN IVERSON

Dated:  May 27, 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMIL BLACKMON, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. 01-CV-6429 |
| ALLEN IVERSON, | : |
| Defendant. | : |

MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS SECOND AMENDED COMPLAINT

Defendant, Allen Iverson ("Iverson"), has moved this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss plaintiff's second amended complaint, which consists in essence of a new "Count IV," called "promissory estoppel," appended to plaintiff's previously pled factual allegations. Dismissal is sought, now of the complaint in its entirety, with prejudice. The reasons are set forth below, beginning first with a brief procedural history and moving then to a discussion of the law and authority that bear on the newly pled count of the complaint and that compel its dismissal.

I. Procedural History

On December 13, 2001, plaintiff filed his first amended complaint in this matter, alleging (1) that Iverson misappropriated plaintiff's idea to use "The Answer" in connection with athletic sportswear and sneakers, (2) that Iverson breached an express contract in which he had agreed to pay plaintiff Blackmon 25% of all proceeds which Iverson received as a result of merchandising products which used "The Answer" rubric, and (3) that Iverson has been unjustly enriched as a result of his accepting, taking, and using of Blackmon's idea without

compensation. On April 8, 2002, Iverson made a motion to dismiss plaintiff's first amended complaint pursuant to Rule 12(b)(6), F.R.Civ. P., for failure to state a claim upon which relief can be granted. On April 4, 2003, after argument and supplemental briefing, this Court granted the motion to dismiss, allowing plaintiff leave to amend his complaint, if he thought he could, to state a claim for promissory estoppel. The Court found, in ruling on defendant's previous motion to dismiss, that plaintiff's alleged facts showed a complete absence of consideration for an enforceable contract to exist between the parties. The Court noted that "plaintiff had confirmed that he was not making an argument based on detrimental reliance or promissory estoppel because he would only be entitled to reliance damages, an amount far less than what the plaintiff is seeking here." Memorandum and Order of April 4, 2003 ("Mem. & Order"), p. 22. However, the Court granted plaintiff leave to amend his complaint to state such a claim, if he could, reminding him that his damages would have to exceed $75,000 for the Court even to have subject matter jurisdiction over the claim, under 28 U.S.C. § 1332.

II. Discussion

    A. Promissory Estoppel is Not a Cognizable Claim under Virginia Law

As discussed in defendant's memorandum of law in support of its motion to dismiss plaintiff's first amended complaint, a federal district court, like this one, exercising diversity jurisdiction, applies the choice of laws rule of the state where it sits. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941). In Pennsylvania, the choice of law analysis consists of two parts: "First, the court must look to see whether a false conflict exists. Then, if there is no false conflict, the court determines which state has the greater interest in the application of its laws. LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1071 (3d Cir. 1996). Here, the jurisdictions whose laws might apply under the prevailing choice of laws rules are Virginia

(where plaintiff and defendant met and where the alleged contract regarding "the Answer" was formed), and, possibly, Pennsylvania (where Iverson presently lives and where the team for which he plays professional basketball is based). The Court did not reach a decision re choice of law on defendant's previous motion to dismiss, because consideration for an enforceable contract was a requirement under both Virginia's and Pennsylvania's laws, and dismissal was mandated regardless of which state's law applied. Mem. & Order, p. 17, n. 5.

On the present motion, though, a conflict between the laws of Virginia and the laws of Pennsylvania does exist. The reason is that promissory estoppel is not recognized as a cause of action under the law of Virginia. See, e.g., W.J. Schafer Assocs. v. Cordant, Inc., 254 Va. 514, 521 (Va. 1997); Ward's Equipment, Inc. v. New Holland North America, Inc., 254 Va. 379, 385 (Va. 1997). Pennsylvania courts, on the other hand, have adopted Section 90 of the Restatement (Second) of the Law of Contracts, as the standard for recognizing a claim of promissory estoppel. See, e.g., Timberline Tractor & Marine, Inc. v. Xenotechnix, Inc., No. 98-3629, 1999 U.S. Dist. LEXIS 5873 (E.D. Pa., April 27, 1999).

Since an actual conflict exists between the laws of the two pertinent states, the Court must look to plaintiff's complaint to determine which state has a greater interest in the subject transaction. See Eastland v. DuPont, No. 96-2312, 1996 U.S. Dist. LEXIS 10360 (E.D. Pa., July 22, 1996) (finding actual conflict to exist between the laws of Pennsylvania and Idaho, where the Idaho statute of frauds invalidated an oral agreement that could not be performed within one year, by applying the laws of the state where the would-be contract was allegedly made.) Here, Iverson's alleged promise, according to the amended complaint, was made in Virginia, and plaintiff's supposed detrimental reliance was mostly performed there; plaintiff asserts all variety of purported investments of time, money and effort in Virginia, such as "caring

-3-

for Allen Iverson's family," after the purported promise was made. Second Amended Complaint ¶¶ 10-15, 18, 20-22, 38.

Accordingly, defendant submits that for the purposes of this motion, the Court should apply the laws of Virginia. Under Virginia law, relief cannot be granted on any species of promissory estoppel claim that the second amended complaint may attempt to state.

B. Plaintiff Fails to State a Claim for Promissory Estoppel Under Pennsylvania Law

Alternatively, should the Court decide to apply Pennsylvania law to plaintiff's claim for promissory estoppel, the second amended complaint must still be dismissed because it fails to state a claim on the substance of promissory estoppel.

In order to state a claim for promissory estoppel under Pennsylvania law, plaintiff must allege (and later prove): "(1) a promise to a promisee, (2) which the promisor should reasonably expect will induce action by the promisee, (3) which does induce such action, and (4) which should be enforced to prevent injustice to the promisee." Timberline Tractor & Marine, Inc, 1999 U.S. Dist. LEXIS 5873, at *11. See also, Altimari v. John Hancock Variable Life Insurance Co., 247 F.Supp.2d 637, *22-24 (E.D. Pa. 2003). Satisfying the last requirement for promissory estoppel, namely, that the promise should be enforced to prevent injustice:

> may depend on the reasonableness of the promisee's reliance, on its definite and substantial character in relation to the remedy sought, on the formality with which the promise is made, on the extent to which the evidentiary, cautionary, deterrent and channeling functions of form are met by the commercial setting or otherwise, and on the extent to which such other policies as the enforcement of bargains and the prevention of unjust enrichment are relevant.

Thatcher's Drug Store of West Goshen, Inc. v. Consolidated Supermarkets, Inc., 535 Pa. 469 (Pa. 1994).

Nothing in the second amended complaint gives rise to the elements of a claim for promissory estoppel. Plaintiff contends that, in reliance upon Iverson's alleged promise to pay him "25% of the proceeds of the sale of all merchandise sold in connection with 'The Answer' slogan," Second Amended Complaint, ¶ 36, plaintiff "took action and assisted Iverson in many ways, including . . . developing the marketing strategies for 'The Answer' slogan, caring for Iverson's family and working with Iverson concerning his professional development, including maintenance of his unique inner city identity." Second Amended Complaint ¶ 38. That such activity, at best consisting of opportunistic solicitude volunteered by a prescient celebrity-seeker, could be reasonably expected by anyone to constitute justifiable "reliance" -- in effect to "seal a bargain" to pay 25% of the proceeds of the sales of all merchandise bearing a particular rubric -- is, as a matter of law, outlandish. The notion that plaintiff was plausibly induced to develop marketing strategies for an as-yet unrealized future merchandising contract, with an as-yet unnamed sports apparel company, is likewise just not credible. See, e.g., Second Amended Complaint ¶ 11.

Importantly, plaintiff offers no allegations of any discussion between himself and Iverson reflecting an understanding that plaintiff would in any way be involved in merchandising "Iverson" products. In fact, the very fact that plaintiff now claims 25% of Iverson's *Reebok* proceeds establishes the opposite: The promise, if one ever existed, was not directed toward, or dependent upon, *any* action, or inaction, being taken by the plaintiff in reliance thereon. In short, plaintiff's alleged reliance was not of the "definite and substantial nature," required by Pennsylvania courts, and by the Restatement (Second) of the Law of Contracts, so as to warrant enforcement of an otherwise naked promise. Indeed, after many years, neither the would-be promise, nor any of plaintiff's actions and forbearances in supposed reliance thereon, have ever

been formalized, memorialized or acknowledged in any way that could bind Iverson, notwithstanding the potentially large amounts of money that would turn on plaintiff's behavior.

Moreover, this Court has already found that, as pled, "the plaintiff's relationship and support for the defendant, his 'surrogate father' role, began in 1987, seven years before the first alleged promise to pay was made." Mem. & Order, pp. 20-21. That the *continuation* of such support could have been reasonably expected by Iverson to have been tendered in reliance on the alleged promise is frivolous. In any event, it is well-settled that a promise will *not* be implied by law, for example, to pay a lifelong friend and neighbor for unsolicited services. See, e.g., Teawalt v. Ramey, 48 S.E. 505 (Va. 1904) (promise not implied by law to pay for gratuitous nursing during a last illness); Mitchell v. Moore, 729 A.2d 1200 (Pa. Super. 1999) (services rendered during a close personal relationship that are not of the type for which one would normally expect to be paid, or that confer a benefit that would be unconscionable to retain without some restitution, do not imply a contract or any quasi-contract, and are considered gratuitous in nature). The Court has already, correctly observed that the plaintiff made no allegation that, at any of the many, would-be times the "promise" was presumably enunciated, plaintiff was expected to move to Philadelphia *three or four years later*. See Mem. & Order, p. 21 (emphasis added.) Indeed, plaintiff acknowledged in his first amended complaint that Iverson paid plaintiff's expenses when he "moved" to Philadelphia, first paying his hotel, then allowing him to live at Iverson's house. First Amended Complaint ¶¶ 55-56. Again, that this would now constitute detrimental reliance on plaintiff's part is ludicrous.

Simply put, the alleged conversation that occurred on an evening in July 1994, wherein the alleged promise took place, involved no discussion whatsoever of any actions Iverson expected plaintiff might take. Plaintiff may now wish to proffer whatever actions he took or did not take, as having been undertaken "in reliance" on the alleged promise of Iverson.

-6-

the would-be promisor. But, Iverson could not have reasonably expected his "promise" to induce any such activity on the part of plaintiff. Without any allegation that Iverson understood that plaintiff's actions toward him were directed solely by reliance on "the promise," there could have been no expectation, and thus, no reliance.

III. Conclusion

For the foregoing reasons, plaintiff's second amended complaint, like its predecessors, fails to state any claim upon which relief can be granted. Defendant, therefore, asks that this last iteration of the complaint also be dismissed with prejudice.

Respectfully submitted,

*Kathleen Johnson*
JOSEPH J. SERRITELLA (I.D. No. 17960)
KATHLEEN A. JOHNSON (I.D. No. 87822)
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, Pennsylvania 19103-2799
(215) 981-4000

and

THOMAS B. SHUTTLEWORTH, II
LAWRENCE H. WOODWARD, JR.
(Admitted *Pro Hac Vice*)
Shuttleworth, Ruloff, Giordano & Swain, P.C.
4525 South Boulevard, Suite 300
Virginia Beach, Virginia 23452
(757) 671-6000

Attorneys for Defendant
ALLEN IVERSON

Dated: May 27, 2003

-7-

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of May 2003, a true and correct copy of the foregoing Motion to Dismiss Second Amended Complaint and memorandum in support thereof of defendant Allen Iverson was deposited as first class mail, postage prepaid, addressed to plaintiff's counsel, as follows:

>Frederick A. Tecce, Esquire
>McShea Tecce, P.C.
>The Mellon Bank Center - 16th Floor
>1735 Market Street
>Philadelphia, Pennsylvania  19103

>and

>J. Garland Giles, Esquire
>Law Offices of Garland Giles
>372 West Johnson Street, Suite 1
>Philadelphia, PA  19144

*Kathleen Johnson*
KATHLEEN A. JOHNSON